Citation Nr: 1706059 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 09-15 848 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUE

Entitlement to service connection for leukemia, to include any residuals, claimed as a result of exposure to ionizing radiation and hazardous chemicals.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

R. Erdheim, Counsel

INTRODUCTION

The Veteran served on active duty from April 1990 to April 1994. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a November 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi, which denied the claim. The RO in Phoenix, Arizona, currently has jurisdiction of the claim. 

The Veteran presented testimony before the undersigned Veterans Law Judge in March 2012. The Board remanded the claim in May 2012, and then sought a medical opinion from the Veterans Health Administration in November 2016.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

It is at least as likely as not that the Veteran's leukemia, and any residuals, was caused or aggravated by his service.


CONCLUSION OF LAW

The requirements for service connection for leukemia, and any residuals, have been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303 (a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). 

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a link between the claimed in-service disease or injury and the present disability. Romanowsky v. Shinseki, 26 Vet.App. 289 (2013). For chronic diseases listed in 38 C.F.R. § 3.309 (a)-including leukemia-service connection may also be established by showing continuity of symptoms. 38 C.F.R. § 3.303 (b); 38 C.F.R. § 3.309 (a); see Walker v. Shinseki, 708 F.3d 1331 (Fed.Cir.2013).

Where a Veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic disease, to include leukemia, to a degree of 10 percent within one year from the date of termination of such service such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309.

The Veteran contends that his leukemia, also diagnosed as hypereosinophilic syndrome with myeloproliferative disorder, and diagnosed in 2005, was caused or aggravated by his service, to include as due to exposure to hazardous chemicals, environmental factors to include while stationed at Camp Lejeune, or radiation while guarding a nuclear facility. 

The Board notes that in July 2011, a VA examiner concluded that it was as likely as not that the Veteran's hypereosinophilic syndrome was related to radiation exposure in service. The examiner based that conclusion on a study that showed that of the workers that were in charge of clean up following the Chernobyl nuclear accident, investigators found that there was a greater chance of developing chronic myeloproliferative diseases. At the same time, the examiner stated that the Veteran was likely exposed to much less than those who were involved in the clean-up of Chernobyl, and that it was unclear as to the level of radiation exposure in the Veteran's case. In December 2005, the Veteran's treating VA physician also stated that there was a good possibility that his present "blood problems" was related to either Gulf War exposure or to exposure to nuclear weapons. However, in March 2015, the Department of the Navy, Naval Dosimetry Center, concluded that there were no reports of occupational exposure to ionizing radiation for the Veteran in the Naval Exposure Registry. In November 2007, the National Personnel Records Center (NPRC) also concluded that there was no evidence of radiation exposure for the Veteran. Thus, despite the positive medical opinions in this case, the evidence is strongly against a finding that the Veteran was actually exposed to radiation while in service. Therefore, the positive opinions bear little weight as to his claim, as the basis for the examinations, that of radiation exposure, has not been established.

Next, although the December 2005 VA physician related the Veteran's disability to his service in the Gulf War, in November 2007, the NPRC replied that there was no evidence in the Veteran's file to substantiate any service in Southwest Asia.

The Veteran also contends that his leukemia was caused or aggravated by contaminates found in the drinking water at Camp Lejeune, North Carolina. In June 2015, his VA physician submitted a medical opinion stating that the Veteran's chronic eosinophilic leukemia was likely due to exposure to chemicals at Camp Lejeune. Here again, however, the evidence weighs against the claim, as the Veteran did not serve at Camp Lejeune during the time period when contaminants were found in the drinking water, but instead served at Camp Lejeune in 1990.

Finally, the Veteran contends that while in service, he was exposed to styrene and benzene found in cleaning solvents, to include Brasso, CLP, and C-4, for such tasks as lubricating weapons. He also used latex gloves and breathed in fumes from jet fuel, which might have also contained these compounds. 

In December 2008, the Veteran's VA physician stated that the Veteran's exposure to chemicals in the military may have caused his hypereosinophilic syndrome which is very rare. The Board obtained an opinion on the matter from a specialist in November 2016. The specialist reviewed the file and concluded that it was at least as likely as not that the Veteran's hypereosinophilic leukemia could have been caused or aggravated by exposure to hazardous chemicals in service. The physician explained that the Veteran's disability was not inherited and occurred in people with no history in their families. The gene mutation leading to the disease was more likely to occur in men. Based upon the medical research, it was likely the Veteran's leukemia was due to the claimed hazardous exposure to chemicals in service. 

When taking into account the Veteran's competent and credible testimony that he used the above cleaning solvents while in service, as well as the November 2016 competent medical opinion supporting his claim, the Board finds that service connection for leukemia, and any residuals thereof, is warranted.


ORDER

Service connection for leukemia, and any related residuals, is granted.



____________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs